IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BLAKE ALEXANDER, # R-45674, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00949-SMY |
| | ) | |
| WEXFORD INSTITUTIONAL, | ) | |
| DR. TROST, | ) | |
| DR. FUENTES, | ) | |
| and UNKNOWN PARTIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Blake Alexander, an inmate who is currently in the custody of the Illinois Department of Corrections ("IDOC"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In his original Complaint (Doc. 1), Plaintiff claimed that four defendants denied him adequate medical care for testicular masses and pain during his incarceration at Menard Correctional Center ("Menard") in 2015 and at Big Muddy River Correctional Center ("Big Muddy") in 2016 (Doc. 1, pp. 1-22). Plaintiff requested monetary damages against the defendants (*id*. at 23).

Less than two weeks after filing his Complaint, Plaintiff filed a First Amended Complaint (Doc. 4). In it, he asserts the same claims against the defendants (Doc. 4, pp. 1-19). In addition to monetary relief, however, Plaintiff seeks injunctive relief that includes diagnosis and treatment of his condition (*id*. at 20).[1]

---

[1] Plaintiff commenced this action without paying a filing fee or filing a Motion for Leave to Proceed *In Forma Pauperis*. On August 29, 2016, the Clerk of this Court sent Plaintiff a letter instructing him to do so within thirty days or face dismissal of the action (Doc. 3). In the meantime, the Court refrained from

**Merits Review Under 28 U.S.C. § 1915A**

The First Amended Complaint is now subject to preliminary review under 28 U.S.C. § 1915A. The Court did not screen the original Complaint, and there is no need to do so at this time. An Amended Complaint supersedes and replaces the original Complaint, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).[2] The original Complaint is void, and the First Amended Complaint is now ripe for review.

Under § 1915A, the Court is required to promptly screen prisoner Complaints, including Plaintiff's First Amended Complaint, to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The First Amended Complaint survives preliminary review under this standard.

**First Amended Complaint**

During his pretrial detention at Lake County Jail, Plaintiff noticed "foreign discharge from his penis" when he urinated (Doc. 4, p. 4). He met with members of the Jail's medical staff to discuss the issue. They recommended a urine analysis.

Before Plaintiff learned the results of the urine test, he transferred into IDOC custody. During intake, Plaintiff notified medical and correctional staff members about the issue. He assumed that someone documented it for the "parent facility" (*id.*).

---

screening the Complaint or First Amended Complaint. On September 19, 2016, Plaintiff prepaid the full $400.00 filing fee.

[2] While Plaintiff is normally required to accompany any proposed amended pleading with a motion seeking leave to file it, the Court will not require him to do so in this instance. Plaintiff is a *pro se* prisoner, who filed the First Amended Complaint less than two weeks after filing the original Complaint. At the time, the case was still in its infancy. The Court had not yet screened the original Complaint, and the defendants were not yet served.

Plaintiff then transferred to Menard. There, he met with Nurse Pollion[3] on January 22, 2015. He informed her about his testicular masses and his family history of cancer (*id*. at 9). Nurse Pollion referred Plaintiff to Doctor Trost (*id*.).

He met with the doctor three days later on January 25, 2015. Plaintiff informed Doctor Trost that the lumps in his testicles caused him to suffer extreme discomfort when he performed daily activities such as sitting and walking (*id*. at 10, 12). Doctor Trost examined Plaintiff and diagnosed him with spermatic cysts. The doctor assured Plaintiff that the masses were not cancerous (*id*.). He also indicated that there was no sign of infection (*id*. at 12). Doctor Trost refused to run any other tests on Plaintiff before reaching this conclusion (*e.g.*, an MRI, x-ray or biopsy) or refer him for a second opinion (*id*. at 10). Plaintiff filed a grievance to complain about the inadequate medical care, but it was denied at all levels (*id*. at 9).

Plaintiff again met with Doctor Trost on May 10, 2015 (*id*. at 10). He asked the doctor to explain why he refused to run any other tests. The doctor simply indicated that he would not do so and ignored Plaintiff's complaints of ongoing symptoms. Plaintiff was seen by an unknown nurse ("Nurse Jane Doe") on May 30, 2015. She referred him to a medical doctor for further diagnosis and treatment.

Plaintiff met with Doctor Fuentes on June 8, 2015. Doctor Fuentes explained that she was not a medical doctor, but rather an optometrist. Nevertheless, after consulting with Doctor Trost about Plaintiff's condition, Doctor Fuentes prescribed Plaintiff a six-week course of antibiotics (*i.e.*, amoxicillin) (*id*. at 10, 12). Plaintiff alleges that both doctors knew that antibiotics would be ineffective because there was no infection (*id*. at 12). Plaintiff filed an emergency grievance on July 22, 2015. The grievance was denied (*id*.).

---

[3] Nurse Pollion is not named as a defendant in this action, and Plaintiff brings no claims against her.

Plaintiff met with Nurse Doe again on August 22, 2015 (*id*. at 15). By this time, he had developed additional "lumps" in his testicles. The nurse expressed concerns about a misdiagnosis. She indicated that the lumps could be cancerous (*id*.). She recommended blood work and a biopsy. Nurse Doe referred Plaintiff to Doctor Travis for further treatment.

When Plaintiff met with Doctor Travis, he reported suffering from constant pain for months. Plaintiff rated the pain "8-10" on a scale of "10," with "10" being the most painful. After listening to his complaints, the doctor told Plaintiff twice that he was "full of shit" and a "con artist" (*id*.). The doctor went on to comment that Plaintiff "has the greasy end" (*id*.). Plaintiff was offended by this comment, although he admittedly had no idea what it meant.[4] When Plaintiff complained to several unknown correctional officers, they "verbally assaulted" him[5] (*id*.).

Plaintiff alludes to other emergency grievances that he filed in order to secure a proper diagnosis and treatment. He mentions an ultrasound that Nurse Doe read and reported to him (*id*. at 17). According to the ultrasound, the masses were benign (*id*.). The nurse nevertheless referred Plaintiff to a doctor for a follow-up appointment to discuss the matter. Plaintiff transferred to Big Muddy before he attended the appointment, and he alleges that Nurse Doe should have placed him on a medical hold (*id*.).

The remainder of the First Amended Complaint addresses Plaintiff's allegations that he was denied adequate medical care at Big Muddy (*id*. at 18-19). However, he names no

---

[4] . . . and neither does the Court. Although Plaintiff devotes several paragraphs to a discussion of this possible "defamation," he does not name Doctor Travis as a defendant in this action. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the Complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

[5] Because he did not name any correctional officers as defendants in this action, all claims against them are also considered dismissed without prejudice. *See id*.

defendants in connection with this claim.[6]  Therefore, all claims against Big Muddy officials are considered dismissed without prejudice.  *See Myles*, 416 F.3d at 551-52.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in the *pro se* First Amended Complaint into the following count:

> **Count 1:    Defendants Wexford, Trost, Fuentes, and Unknown Parties exhibited deliberate indifference to Plaintiff's testicular masses and associated pain at Menard in 2015.**

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of this count does not constitute an opinion regarding its merit.

## Count 1

The First Amended Complaint articulates a viable Eighth Amendment deliberate indifference to medical needs claim (**Count 1**) against Defendants Trost and Fuentes.  However this claim shall be dismissed without prejudice against Defendants Wexford and Unknown Parties.

Deliberate indifference to serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).  To state an Eighth Amendment claim in this context, the plaintiff must show that: (1) the medical condition was sufficiently serious (an objective standard) and; (2) state officials

---

[6] All claims arising from events that transpired at Big Muddy are considered dismissed without prejudice. *Id*.

acted with deliberate indifference to his medical needs (a subjective standard). *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

At this early stage, the allegations satisfy the objective component of this claim. Plaintiff complains of multiple masses in his testicles that caused "extreme discomfort" for many months and prompted him to seek medical treatment repeatedly over the course of a year. A serious medical need exists where the condition causes "chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Further, the Seventh Circuit has specifically recognized that testicular growths, cysts, and painful urination constitute a serious medical need. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Thus, for screening purposes, Plaintiff's allegations satisfy the objective component of this claim.

Deliberate indifference occurs when a defendant is aware of a serious medical need, but recklessly or intentionally disregards it. *Id*. at 524 (citations omitted). However, a plaintiff is not required to show that his complaints were "literally ignored." *Sherrod*, 223 F.3d at 611. This requirement is satisfied where Plaintiff shows that a defendant's responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs. *Hayes*, 546 F.3d at 524 (citations omitted). Under this standard, the allegations suggest that Defendants Trost and Fuentes may have responded with deliberate indifference to Plaintiff's complaints of pain associated with his testicular masses. Accordingly, Count 1 cannot be dismissed against these defendants.

However, the allegations support no claim against Wexford, a private corporation that contracted to provide medical services at Menard. A private corporation cannot be held liable under § 1983 unless the constitutional deprivation was caused by the corporation. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). *Respondeat superior* liability is

inapplicable to a private corporation. *Id*. (citation omitted). Generally, liability arises when a policy or custom of the corporation caused the deprivation at issue. Because Plaintiff mentions no policy or custom of Wexford, he cannot proceed with a claim against this defendant.

The allegations also support no claim against the unknown defendants. Plaintiff names a group of unknown health care providers in Menard's Medical Unit ("Jane/John Does"). However, with one exception, he mentions none of them in his statement of claim. Liability under § 1983 requires a plaintiff to establish that each defendant was personally involved in a constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) (citation omitted). Merely invoking the name of a potential defendant is insufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). For these reasons, Plaintiff cannot proceed with Count 1 against the group of unknown parties he lists as defendants.

This includes Defendant Doe, who is mentioned several times in the statement of claim. The allegations simply do not suggest that the nurse responded to Plaintiff with deliberate indifference. Each time she met with him, Defendant Doe examined Plaintiff and referred him to a more qualified medical professional. She did not delay the referrals or deny him treatment at any time. Plaintiff's mere disagreement with the nurse's decisions gives rise to no claim. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations"). Given the lack of allegations suggesting that Defendant Doe intentionally and recklessly disregarded Plaintiff's medical needs, Count 1 fails to state any claim for relief against this defendant.

In summary, Count 1 shall receive further review against Defendants Trost and Fuentes. However, this claim shall be dismissed without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

### Pending Motion

Plaintiff's Motion for Service of Process at Government Expense (Doc. 2) is **GRANTED in part** as to Defendants **TROST** and **FUENTES** and **DENIED in part** as to Defendants **WEXFORD INSTITUTIONAL** and **UNKNOWN PARTIES**.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendants **WEXFORD INSTITUTIONAL** and **UNKNOWN PARTIES**.

**IT IS FURTHER ORDERED** that **COUNT 1** is subject to further review against Defendants **TROST** and **FUENTES**.

**IT IS ALSO ORDERED** that Plaintiff's request for injunctive relief is **DENIED** without prejudice. Plaintiff is no longer housed at Menard, where the events giving rise to this action occurred and where all named defendants are employed. The First Amended Complaint does not suggest that Plaintiff will be transferred back to Menard during the pending action. His request for injunctive relief is therefore moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."). Although he is now housed at Big Muddy, Plaintiff names no Big Muddy officials as defendants in this action; all claims arising from conduct that occurred at Big Muddy are therefore **DISMISSED** without prejudice.

With regard to **COUNT 1,** the Clerk of Court shall prepare for Defendants **TROST** and **FUENTES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 4) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 7, 2016**

s/ STACI M. YANDLE
**STACI M. YANDLE**
**United States District Judge**